913 P.2d 252

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Charles LANDGRAF, a/k/a Charles
Hargrove, Defendant–
Appellant.**

No. 15993.

Court of Appeals of New Mexico.

Jan. 11, 1996.

Certiorari Denied Feb. 22, 1996.

Tom Udall, Attorney General, Bill Primm, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, for Defendant–Appellant.

## OPINION

BLACK, Judge.

1. On July 13, 1992, Charles Landgraf (Defendant) drank some beer after work. Early that evening he drove his sports car south on Highway 70 from Clovis toward Portales. A New Mexico State Police Officer clocked Defendant travelling in excess of 100 miles per hour. A high speed chase ensued covering twenty miles and involving numerous law enforcement personnel. A car with six occupants attempted to turn across Highway 70 and collided with Defendant. Three of the occupants of the other vehicle died and Defendant was charged in a seventeen-count criminal information.

2. The jury found Defendant guilty of: three counts of vehicular homicide; three counts of evading and eluding a police officer resulting in death; and possession of under one ounce of marijuana. On appeal, Defendant challenges his convictions, arguing the district court erred in: (1) denying a change of venue; (2) refusing a preemptory juror challenge; (3) admitting challenged testimony; (4) aggravating Defendant's sentences; (5) refusing to allow good-time credit for the period preceding trial; and (6) allowing two manslaughter convictions on each death. We affirm the district court on all but Defendant's last issue and remand for resentencing.

## I.  Facts

3. On July 13, 1992, Defendant and a co-worker went from Clovis to Artesia to check on a construction job. On their return, they drank some beer. Shortly after 8:00 p.m., Defendant decided to drive to Portales to see his girlfriend.

4. As Defendant drove his sports car southbound on Highway 70, New Mexico State Police Officer Kevin Boyd was travelling northbound. Officer Boyd clocked Defendant's vehicle at 104 miles per hour. He immediately turned his unit around, engaged his lights and pursued Defendant's car. A deputy sheriff joined the pursuit. The highway between Clovis and Portales is a four-lane highway divided by a median. Before reaching Portales, Defendant's car crossed the median, turned around, and headed back toward Clovis. As he approached the intersection of Highway 70 and Diane Street, Defendant changed lanes. Sheila Perkins was driving a car going toward Portales and made a left turn onto Diane Street. She had five passengers. The two cars collided. Three children who were passengers in the car, Cory Johnson, Dontrel Perkins, and Denny Castro, were killed. Sheila Perkins, Sherry Castro, Andrew Johnson, and Defendant all sustained injuries in the accident. Shortly after the accident, Defendant's blood alcohol concentration was determined to be .13 percent.

5. At trial, Defendant introduced evidence that previously he had suffered spinal and head injuries in an industrial accident. Thereafter, he had massive headaches and had been diagnosed as having a fifty percent whole body impairment. Defendant's trial experts were a neuropsychologist and a psychologist who both testified that these prior head and cervical injuries, combined with the alcohol consumption, made Defendant legally insane on the night of the fatal wreck. The State brought in an expert who disagreed.

6. In addition to the guilty verdicts, the jury found Defendant not guilty on three counts of first degree murder, assault with the intent to commit a violent felony upon an officer, and great bodily injury by motor vehicle.

## II. The District Court Did Not Abuse Its Discretion in Denying a Change of Venue

7. Prior to trial, Defendant moved for a change of venue and provided the court a random selection survey of local attitudes toward Defendant and the trial. The district court denied Defendant's motion. Recognizing the holding of *State v. Chamberlain,* 112 N.M. 723, 819 P.2d 673 (1991), Defendant concedes "that the Trial Court has broad discretion in ruling on motions to change venue and the Appellate Courts will not disturb its decision absent a showing of an abuse of that discretion." The burden to show this abuse of discretion lies with the appellant. *Id.* at 726, 819 P.2d at 676.

8. Defendant cites this Court to no evidence in the record to substantiate his claim that the district court abused its discretion, but argues generally that the survey as well as later voir dire "showed there was extensive knowledge of the case and opinions thereof by the people in the community." Proof of exposure of venire members to publicity about a case does not establish a presumption of prejudice. *Id.; see also Deats v. State,* 80 N.M. 77, 80, 451 P.2d 981, 984 (1969) (extensive pretrial publicity by itself does not necessarily establish prejudice). Rather, Defendant must prove that the jurors had "such fixed opinions that they could not judge impartially the guilt of the defen-

dant." *State v. Hernandez,* 115 N.M. 6, 21, 846 P.2d 312, 327 (1993) (punctuation and citation omitted). This he did not do. In short, nothing in Defendant's argument convinces us the district court acted unfairly and committed a palpable abuse of discretion. *See State v. Rushing,* 85 N.M. 540, 545, 514 P.2d 297, 302 (1973).

## III. The District Court Properly Denied Defendant's Peremptory Juror Challenge

9. Several of the accident victims were black and Defendant is not. Defendant argues the district court erred in refusing to honor his peremptory challenge of a black juror. When such a challenge is raised by any party the trial court must engage in a three-step analysis. *Purkett v. Elem,* —— U.S. ——, —— –——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995). First, the opponent of a peremptory challenge must make out a prima facie case that the challenge shows racial discrimination. The proponent of the peremptory strike must then come forward with a race-neutral explanation. If such a race-neutral explanation is tendered, the trial court must decide whether the opponent of the peremptory challenge has proved purposeful racial discrimination. *Id.*

10. Here, the prosecutor made out a prima facie case of racial discrimination. He showed that there were three potential jurors who were black and that Defendant's counsel had already stricken a black woman. The prosecutor then pointed out that defense counsel also struck the juror at issue, a black male. After the prosecutor objected based on this showing, the district court asked defense counsel his reasons for striking the black juror. Defense counsel tendered the race-neutral explanation that he perceived an educational deficit that would likely cause the potential juror to have difficulty understanding Defendant's medical testimony.

11. Based on the tendered explanation, the district court did not abuse its discretion in finding purposeful discrimination. The trial court is not required to accept tendered race-neutral explanations at face value, but should scrutinize them to insure

that purposeful discrimination is not taking place. *See State v. Guzman*, 119 N.M. 190, 194, 889 P.2d 225, 229 (Ct.App.1994) (race-neutral explanations should not be accepted when facts show same factors used to strike Hispanics were not applied to Anglos), *cert. denied*, 119 N.M. 20, 888 P.2d 466 (1995).

## IV. Admissibility of Evidence

### A. Testimony Regarding the Accident Scene

12. Defendant argues that because it was never disputed that the accident produced very serious injuries and that heroic efforts were required to extricate the victims from the wreckage, it was error to admit any testimony regarding those subjects. Defendant maintains such evidence was not relevant under SCRA 1986, 11–401 (Repl.1994) (Rule 401) and, even if it was relevant, it should have been excluded as more prejudicial than probative under SCRA 1986, 11–403 (Repl.1994) (Rule 403).

■ 13. As a predicate for depraved mind murder in this case the State had to prove Defendant drove at a high rate of speed, struck the victims, and caused their deaths. The State was also required to prove that Defendant committed an act which was "greatly dangerous to the lives of others, indicating a depraved mind regardless of human life" and that Defendant knew "such acts create[d] a strong probability of death or great bodily harm." NMSA 1978, § 30–2–1 (Repl.Pamp.1994). Evidence showing the natural consequences and actual results of Defendant's actions was admissible as proof of the elements for depraved mind murder. *State v. Johnson*, 103 N.M. 364, 369, 707 P.2d 1174, 1179 (Ct.App.) ("depraved mind murder is defined primarily by its consequences"), *cert. quashed*, 103 N.M. 344, 707 P.2d 552 (1985). The extent of the wreck and the heroic efforts required of rescuers to deal with the devastation were offered as proof of the consequences of the charged offense.

■ 14. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SCRA 11–401. The havoc caused by Defendant's operation of his vehicle make it more probable such acts were "greatly dangerous to the lives of others." Section 30–2–1(A)(3). The trial court had discretion to determine that the probative value of this evidence was not "substantially outweighed by the danger of unfair prejudice." SCRA 11–403; *see also Chamberlain*, 112 N.M. at 726, 819 P.2d at 676.

### B. Officers' Testimony

15. Defendant next challenges portions of testimony by police and fire officials involved in the high-speed chase and subsequent rescue. Defendant again relies on Rules 401 and 403 to support his challenge to the trial court's admission of testimony by former Deputy Sheriff Matthew Murray and former firefighter Jeffrey Bass that they quit their jobs as a consequence of this wreck.

■ 16. Once again, the record does not support Defendant's position. Defendant was charged with assault on a peace officer; specifically, Deputy Murray. That offense requires the State to prove that Defendant knew Murray was a peace officer and that Defendant intended to and attempted to kill Murray by hitting Murray with his car. Deputy Murray's testimony was admissible to prove those elements.

17. Deputy Murray testified that he quit the sheriff's office three or four weeks after Defendant, travelling at a speed in excess of 100 miles per hour, aimed his car at the midsection of Murray's police car. Defendant very narrowly missed striking the car only because Murray was able to back quickly into the median. Murray was totally and profoundly convinced that Defendant intended to kill him and he acted on this conviction by quitting police work.

■ 18. Mr. Bass testified that following the accident he left the fire department because he had determined he was not cut out for handling situations where he was forced to be helpless when people were so seriously injured. Although the relevance of Bass's testimony was somewhat marginal, the trial court acted within its discretion in

finding this testimony related to the elements of depraved mind murder discussed previously.

19. The trial court had broad discretion to determine the relevance and probative value of offered testimony, and Defendant has not shown an abuse of discretion. *See State v. Worley,* 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). Thus, the trial court properly admitted evidence from Murray and Bass concerning the automobile wreck.

■ 20. Defendant complains that the State elicited from witnesses, especially police officers, statements that, in their opinions: Defendant had a depraved mind and no regard for human life; Defendant's complex motor reactions demonstrated deliberation; and the crash was intentional. Relying on *State v. Alberico,* 116 N.M. 156, 861 P.2d 192 (1993), Defendant contends these officers should not have been permitted to give opinions "on the ultimate issue which the jury is to determine." We think Defendant has misconstrued *Alberico.* In *Alberico,* the New Mexico Supreme Court recognized and acknowledged the continuing validity of its prior decisions "that expert testimony is admissible even if it touches upon an ultimate issue to be decided by the trier of fact." *Id.* at 175, 861 P.2d at 211. The jury is, however, free to disregard any or all such opinion testimony. *Id.* at 164–65, 861 P.2d at 200–01. An instruction outlining the jury's role in evaluating expert testimony was given in this case. All the complained-of evidence was rationally based on the witnesses' perceptions and helpful to the jury's determination of the depraved mind murder charges. *See* SCRA 1986, 11–701 (Repl.1994). Additionally, we note that Defendant was not convicted on these counts, and thus it appears he was not particularly prejudiced by this testimony.

## V. The District Court Properly Aggravated Defendant's Sentences

■ 21. Defendant argues the district court improperly considered elements of the offenses of which Defendant was convicted to aggravate Defendant's sentence pursuant to NMSA 1978, Section 31–18–15.1 (Repl. Pamp.1994). That statutory provision allows the trial judge to alter the basic sentence

upon a finding "of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." *Id.* However, the basic elements of a crime cannot be used to obtain a conviction and then also serve as aggravating circumstances. *State v. Kurley,* 114 N.M. 514, 516, 841 P.2d 562, 564 (Ct. App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992).

■ 22. In aggravating the sentence the district court observed that, although Defendant had numerous opportunities to stop and thereby avoid the wreck, he did not put on his brakes at all before striking the victims' car. The State's expert, Lt. Force, testified that if Defendant had tapped his brakes for one-half second, or even just switched lanes, he could have avoided the collision entirely.

■ 23. While these factors are consistent with Defendant's convictions for homicide through the unlawful operation of a vehicle, they are not elements necessary to prove the crime. The State proved the basic elements of the crime with other facts, such as speed in excess of 100 miles per hour. A sentence may be properly aggravated based on events surrounding the crimes and the nature of a defendant's threat to society. *State v. Cawley,* 110 N.M. 705, 712, 799 P.2d 574, 581 (1990); *State v. Fuentes,* 119 N.M. 104, 109–10, 888 P.2d 986, 991–92 (Ct.App. 1994), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995). Aggravation may also be based on the nature and extent of the suffering caused. *See State v. Bernal,* 106 N.M. 117, 118, 739 P.2d 986, 987 (Ct.App.), *cert. denied,* 106 N.M. 81, 738 P.2d 1326 (1987). Here, the district court expressly recognized the pain Defendant caused other people. We view the district court's findings in the most favorable light and resolve all inferences to support the judgment. *State v. Encinias,* 104 N.M. 740, 741, 726 P.2d 1174, 1175 (Ct.App.), *cert. quashed,* 104 N.M. 632, 725 P.2d 832 (1986). We find an adequate basis for aggravation of Defendant's sentence.

## VI. Defendant Was Not Entitled to Good–Time Credit Prior to His Conviction and Sentencing

24. The State charged Defendant with three counts of first degree murder under

Section 30–2–1(A)(3). The district court, therefore, had the option to refuse to set bond and keep Defendant incarcerated prior to trial. N.M. Const. art. II, § 13. The district court repeatedly refused to dismiss the first degree murder charges and kept Defendant incarcerated from the date of the wreck on July 13, 1992, until trial in May 1994. The district court also refused to award Defendant any good-time credit.

25. Defendant maintains that, because the district court acknowledged Defendant was a model prisoner and trustee at the county jail, NMSA 1978, Section 33–3–9(A) (Repl.Pamp.1990), requires an award of good-time credit. That statute provides:

The sheriff or jail administrator of any county with the approval of the district judge or committing judge may grant any person imprisoned in the county jail a deduction of time from the term of his sentence for good behavior and industry or may establish rules for the accrual of "good time." Deductions of time shall not exceed one-third of the term of the prisoner's original sentence. If a prisoner is under two or more cumulative sentences, the sentences shall be treated as one sentence for the purpose of deducting time for good behavior.

26. Initially, we observe this permissive language does not support Defendant's position. Moreover, it clearly applies only to persons actually "imprisoned" pursuant to a "sentence."

27. Defendant's argument is inconsistent not only with the express language of the statute, but also with the underlying rationale of good-time credit. Good-time credit in New Mexico is designed to promote rehabilitation. Prior to trial a defendant, who is presumed innocent, has no basis for rehabilitation. Moreover, a defendant who is still presumed innocent cannot be made to perform the compulsory labor that is generally a precondition for good-time credit. Good-time credits, therefore, are available only to convicted and sentenced prisoners. *State v. Aqui*, 104 N.M. 345, 349–50, 721 P.2d 771, 775–76, *cert. denied*, 479 U.S. 917, 107 S.Ct. 321, 93 L.Ed.2d 294 (1986), *limited by Brooks v. Shanks*, 118 N.M. 716, 885 P.2d 637 (1994); *State v. Seward*, 104 N.M. 548, 556, 724 P.2d 756, 764 (Ct.App.), *cert. denied*, 104 N.M. 522, 724 P.2d 231 (1986).

**VII. The District Court Erred in Providing Consecutive Sentences for Two Types of Vehicular Homicide for Each Death**

28. In addition to being charged with first degree murder for each of the three deaths which resulted from the accident, Defendant was charged under NMSA 1978, Section 66–8–101 (Repl.Pamp.1994), with two charges of vehicular homicide for each death. The statute defines homicide by vehicle in the following terms:

A. Homicide by vehicle is the killing of a human being in the unlawful operation of a motor vehicle.

. . . .

C. Any person who commits homicide by vehicle or great bodily injury by vehicle while under the influence of intoxicating liquor or while under the influence of any drug or while violating Section 66–8–113 NMSA 1978 is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978, provided that violation of speeding laws as set forth in the Motor Vehicle Code [Articles 1 to 8 of Chapter 66, except 66–7–102.1 NMSA 1978] shall not per se be a basis for violation of Section 66–8–113 NMSA 1978.

. . . .

F. Any person who willfully operates a motor vehicle in violation of Subsection C of Section 30–22–1 NMSA 1978 and directly or indirectly causes the death of or great bodily injury to a human being is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31–18–15 NMSA 1978.

29. The statute referred to in Section 66–8–101(F) states:

Resisting, evading or obstructing an officer consists of:

. . . .

C. willfully refusing to bring a vehicle to a stop when given a visual or audible

signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle[.]

NMSA 1978, Section 30–22–1(C) (Repl. Pamp.1994).

30. Under Section 66–8–101, then, a Defendant may be found guilty of homicide by vehicle if he kills someone either by driving under the influence of alcohol or drugs, subsection C, or while resisting, evading or obstructing an officer, subsection F. Defendant maintains that his constitutional rights were violated when the trial court allowed the jury to return guilty verdicts on more than one of these alternatives and then imposed consecutive sentences for multiple violations of the same statute. On the present facts, we agree.

■■■■ 31. Initially, we note the jury was instructed that to find Defendant guilty of vehicular homicide it had to find that Defendant's driving while intoxicated caused each death. The jury was also instructed that to find Defendant guilty of causing death while resisting, evading or obstructing an officer it had to find Defendant's actions in willfully refusing to bring his vehicle to a stop when signaled to do so by an officer caused each death. Because the jury found Defendant guilty of both types of homicide by vehicle on each death, and both statutory provisions require proof of causation, we must first consider that element. An act must be the proximate cause of a death before a conviction for homicide can be returned based on that act. *See State v. Nichols*, 34 N.M. 639, 642, 288 P. 407, 408 (1930). However, "[i]n the determination of proximate cause common sense is not to be eliminated." *State v. Benton*, 38 Del. 1, 187 A. 609, 615 (1936); *cf. Lopez v. Employment Sec. Div.*, 111 N.M. 104, 106, 802 P.2d 9, 11 (1990) ("Enactments of the legislature are to be interpreted to accord with common sense and reason."). Therefore, although a defendant may take several actions, each of which could have caused the victim's death, only one such action actually caused the death and the defendant can be convicted of only one murder. *See People v. Szabo*, 94 Ill.2d 327, 68 Ill.Dec. 935, 946, 447 N.E.2d 193, 204

(1983). This is one of the logical underpinnings for the "one death, one homicide conviction" rule adopted by several jurisdictions. *See, e.g., People v. Bartowsheski*, 661 P.2d 235, 246 (Colo.1983) (en banc); *Collins v. State*, 605 So.2d 568, 569 (Fla.Dist.Ct.App. 1992); *State v. Manning*, 234 N.J.Super. 147, 560 A.2d 693, 701 (App.Div.), *cert. denied*, 117 N.J. 657, 569 A.2d 1351 (1989). In remanding convictions for both reckless homicide and causing death while operating a vehicle under the influence based on the same accident, the Indiana Court of Appeals considered the limitations of the causation element:

> It matters no more that Carter was both intoxicated and driving recklessly in causing his passenger's death than it would have had Carter poisoned him, stabbed him and thrown him from a high bridge. The means of committing an offense may not be utilized to multiply the number of offenses committed. Only one homicide was committed and only one sentence may be imposed.

*Carter v. State*, 424 N.E.2d 1047, 1048 (Ind. Ct.App.1981).

■■■ 32. Even if Defendant could cause death in two different ways by one act, however, we must also consider the other elements of Section 66–8–101. Section 66–8–101 sets out four ways in which homicide by vehicle may be committed. *State v. Yarborough*, 120 N.M. 669, 675, 905 P.2d 209, 215 (Ct.App.), *cert. granted*, 120 N.M. 636, 904 P.2d 1061 (1995); *State v. Yazzie*, 116 N.M. 83, 85, 860 P.2d 213, 215 (Ct.App.1993). When a statute provides alternate means of committing an offense, each alternative should be treated as if it were a separate statute. *See State v. Rodriguez*, 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct.App.), *cert. denied*, 113 N.M. 636, 830 P.2d 553 (1992). However, "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980); *see also, Houser v. State*, 474 So.2d 1193, 1197 (Fla.1985) ("Florida courts have repeatedly recognized

that the legislature did not intend to punish a single homicide under two different statutes."). In similar situations, other courts have held that, although the elements of two statutes punishing two types of homicide by vehicle do not strictly overlap, "the two offenses are sufficiently closely related so as to preclude punishment on both." *Commonwealth v. Jones*, 382 Mass. 387, 416 N.E.2d 502, 507 (1981); *cf. Carter*, 424 N.E.2d at 1054 (where elements of two offenses partially overlap, court may convict on both but sentence on only one) (Staton, J., concurring).

33. Courts which have considered whether multiple statutory violations culminating in one death by vehicle can be subjected to multiple punishments have employed different methods of analysis and reached different results. Some have concluded that in such a situation, multiple punishments would violate the constitutional limitation on subjecting a defendant to double jeopardy. *See, e.g., State v. Dechaine*, 572 A.2d 130, 136 (Me.), *cert. denied*, 498 U.S. 857, 111 S.Ct. 156, 112 L.Ed.2d 122 (1990). Other courts have relied upon a modern version of the *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), analysis and have concluded that double jeopardy either does or does not apply depending on the theory of the offense pleaded by the state. *Compare Dawson v. State*, 612 N.E.2d 580, 585 (Ind.Ct.App.1993) (concluding that double jeopardy does not apply to causing death while intoxicated and causing death recklessly when the theory of causing death recklessly does not implicate intoxication) *with Carter*, 424 N.E.2d at 1049–50 (Staton, J., concurring) (concluding that double jeopardy does apply in a similar situation where the theory of causing death recklessly does implicate causing death while intoxicated).

34. The purpose of the *Blockburger* analysis, however, is to use differences in statutory definitions as an indication of legislative intent. *Fuentes*, 119 N.M. at 105–06, 888 P.2d at 987–88. If the elements do not coincide under *Blockburger*, we may then consider other indicia of legislative intent. *Id.* at 109, 888 P.2d at 990; *State v. Frank-*

*lin*, 116 N.M. 565, 568–69, 865 P.2d 1209, 1212–13 (Ct.App.1993). Even though all of the elements of Section 66–8–101 do not necessarily coincide, then, we think the statutory language and structure lead to the conclusion that the New Mexico legislature did not intend multiple punishments for one death.

35. We do not believe the New Mexico legislature intended one physical action by a defendant to serve as the predicate for more than one of the four alternatives presented under the homicide by vehicle statute. *See State v. Williams*, 105 N.M. 214, 217, 730 P.2d 1196, 1199 (Ct.App.1986) (statutory enumeration of alternative methods of committing criminal sexual contact does not evince a legislative intent to authorize multiple punishments for the same act); *see also State v. Orgain*, 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct.App.) (different subsections of forgery statute held alternative ways of committing the same offense), *cert. denied*, 115 N.M. 145, 848 P.2d 531 (1993).

36. Since legislatures often produce little evidence of their intent regarding multiple punishment, the rule of lenity is often an appropriate tool of statutory construction in such contexts. *See Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980); *People v. Donaldson*, 91 Ill.2d 164, 61 Ill.Dec. 780, 782, 435 N.E.2d 477, 479 (1982). In this statutory framework the rule "merely means that if [the legislature] does not fix the punishment for a [state] offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). "With regard to the constitutional prohibition on punishing a defendant in excess of legislative command, it is a principle of double jeopardy and requires that vague or ambiguous statutes be resolved leniently to prevent zealous prosecutors and timorous judges from perceiving two offenses where the legislature intended only one." Peter Westen & Richard Drubel, *Toward A General Theory Of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 118 (1978). New Mexico courts have adopted these principles and repeatedly recognized that "[i]n the absence of a clear indication

that the legislature intended multiple punishment for the unitary conduct, the court should apply the rule of lenity to presume that the legislature did not intend multiple punishment." *Franklin,* 116 N.M. at 569, 865 P.2d at 1213; *see also Swafford v. State,* 112 N.M. 3, 15, 810 P.2d 1223, 1235 (1991); *State v. Charlton,* 115 N.M. 35, 40, 846 P.2d 341, 346 (Ct.App.1992), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993).

37. The Colorado Supreme Court applied the rule of lenity to analogous facts in *People v. Lowe,* 660 P.2d 1261 (Colo.1983) (en banc). The defendant therein argued "that principles of double jeopardy prohibit[ed] him from being convicted of two counts of first degree murder for one killing." *Id.* at 1265. The Colorado Supreme Court vacated the defendant's multiple murder convictions with language apropos in the present case:

> The most difficult problem presented by this appeal is whether the defendant committed one or two offenses. We are persuaded that the evidence could establish, as it does in this case, that a single act of killing could be committed both after deliberation and in the perpetration of one of the enumerated felonies.... Murder after deliberation and felony murder are not denominated by the Code as separate and independent offenses, but only ways in which criminal liability for first-degree murder may be charged and prosecuted.

> The legislature has not manifested any clear intent that a defendant could be convicted of more than one kind of first-degree murder where there is but one victim. The rule of lenity requires that the first-degree murder statute be construed to favor the defendant. That construction is that a defendant can be convicted only of one first-degree murder for one killing.

*Id.* at 1269 (footnote omitted).

38. We do not believe the New Mexico legislature has manifested any clear intent that Defendant could be convicted of more than one type of homicide by vehicle for each victim. We therefore remand this case to the trial court with instructions to vacate three of Defendant's homicide by vehicle convictions under Section 66–8–101 and

for resentencing, but affirm as to all other issues.

**IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.