2001–NMCA–011

25 P.3d 257

STATE of New Mexico,
Plaintiff–Appellee,

v.

Gordon HOUSE, Defendant–Appellant.

No. 20,438.

Court of Appeals of New Mexico.

Jan. 4, 2001.

Certiorari Denied, No. 26,771,
March 8, 2001.

Patricia A. Madrid, Attorney General, Steven S Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

William J. Friedman, Santa Fe, NM, for Appellant.

## OPINION

ARMIJO, Judge.

{1} In this appeal, Gordon House (Defendant) appeals from the sentence imposed upon remand, arising from the incident of Christmas Eve 1992. Previously, our Supreme Court affirmed Defendant's convictions. *See State v. House,* 1999–NMSC–014, 127 N.M. 151, 978 P.2d 967. Pursuant to the State's concession before this Court, the matter was then remanded for reformation of the sentence. Defendant now challenges his resentencing. We affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} On Christmas Eve 1992, Defendant drove his vehicle the wrong way onto Interstate 40 (I–40); that is, he entered the highway driving east in the west-bound lane.

Other travelers, including a police officer, noted Defendant's vehicle traveling in this manner at a high rate of speed. Defendant collided with another vehicle, killing a mother and her three children, and leaving the father grievously injured.

{3} Officers on the scene concluded, in addition to his reckless driving, that Defendant had been drinking that evening, such that it impaired his ability to operate a motor vehicle. They arrested him, and he was subsequently tried on four counts of DWI-related vehicular homicide, four counts of reckless-driving-related vehicular homicide, one count of DWI-related grievous bodily injury with a motor vehicle, and one count of reckless-driving-related grievous bodily injury with a motor vehicle.

{4} The State charged the DWI-related and reckless-driving-related theories in the alternative. That is, after pleading each of the DWI-related counts, the State pled, "OR IN THE ALTERNATIVE: VEHICULAR HOMICIDE (RECKLESS DRIVING)" and "OR IN THE ALTERNATIVE: GREAT BODILY INJURY BY VEHICLE (RECKLESS [DRIVING])." Similarly, the jury was instructed on the theories as alternatives, the DWI-related charges being prioritized.

{5} The jury convicted Defendant on each of these counts, and the district court imposed a sentence of three years on one count of grievous bodily injury with a motor vehicle and three years each on eight counts of vehicular homicide [1], four based upon a driving-while-intoxicated (DWI) theory, and four upon a reckless-driving theory. While retaining the redundant convictions-in violation of Defendant's protections against double jeopardy, *see State v. Landgraf*, 1996–NMCA–024, ¶ 38, 121 N.M. 445, 913 P.2d 252—the district court imposed concurrent sentences on the alternate vehicular homicide theories. Finally, in light of Defendant's prior misdemeanor DWI conviction, the district court imposed a ten-year enhancement in accordance with NMSA 1978, § 66–8–101(D) (1991); that is, one two-year enhancement

for each DWI-related vehicular homicide conviction. Defendant thus received a total sentence of twenty-five years.

{6} As noted above, Defendant previously sought reversal of his convictions and sentence in New Mexico's appellate courts alleging seven claims of error: (1) error in the transfer of venue; (2) error in the make-up of the jury; (3) error in the district court's denial of his motion to dismiss after two mistrials; (4) error in using his prior DWI conviction to enhance his sentence; (5) error upon the retention of and sentencing upon alternative counts for each homicide and injury; (6) error on various matters within the discretion of the trial court; and (7) error regarding the role of the Navajo Nation in his trial. Notably, the State conceded error regarding entry of the eight homicide convictions and sentences during proceedings before this Court and, in response, Defendant moved "this [C]ourt to vacate the four NMSA 1978[,] § [ ] 66–8–101(a) (reckless driving) convictions as constitutionally infirm. Additionally[,][D]efendant's NMSA 1978[,] § [ ]66–8–101(b) (great bodily harm/reckless driving) conviction is constitutionally infirm as well and must be vacated." This Court did not grant the motion. Our Supreme Court subsequently affirmed Defendant's convictions, *see House*, 1999–NMSC–014,- ¶ 113, 127 N.M. 151, 978 P.2d 967, and remanded the matter for reformation of the sentence.

{7} On remand, the district court afforded the precise relief Defendant sought previously before this tribunal; that is, it vacated each of Defendant's convictions which were based upon a reckless-driving theory. While curing the double jeopardy violation, this reformation left intact Defendant's sentence of twenty-five years. It is this aspect of Defendant's re-sentencing that is now before this Court. He again appeals. In turn, the State argues that the doctrine of law of the case forecloses Defendant's appeal on this issue.

## DISCUSSION

{8} Defendant's arguments range widely; however, broadly read, he states five argu-

---

1. Subsequent to Defendant's conviction, the Legislature amended the sentencing statutes, and the maximum basic sentence now available for ve-

hicular homicide is six years. *See State v. Guerro*, 1999–NMCA–026, ¶ 9, 126 N.M. 699, 974 P.2d 669.

ments: (1) our vehicular homicide statute is "irreducibly ambiguous" as to which theory, DWI-related or reckless-driving-related vehicular homicide, takes priority in the event of convictions under both theories; (2) our statute is ambiguous as to the appropriate unit of prosecution; (3) the statute's enhancement provision is unconstitutionally ambiguous; (4) the enhancement provision violates equal protection and due process; and (5) the district court violated his due process rights in denying his motion to recuse the trial judge. He also invokes, albeit without substantive argument or application, the doctrine of constitutional doubt. For the reasons discussed below, we affirm Defendant's sentence in all regards.

1. *This Court has jurisdiction over the present appeal.*

{9} We first address the State's argument that this Court is without jurisdiction to hear the present appeal. We remain unpersuaded by this argument.

{10} First, the State argues the doctrine of law of the case forecloses our ability to hear any argument not made on Defendant's previous appeal. Application of this doctrine is a matter of discretion and is not an inflexible rule of jurisdiction. *See State v. Breit*, 1996–NMSC–067, ¶ 12, 122 N.M. 655, 930 P.2d 792. Also, the doctrine traditionally applies only where a matter has been specifically ruled upon in a prior and final appellate proceeding. *See id. But cf. DiMatteo v. County of Dona Ana*, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct.App.1989) (recognizing, in civil context, that law of the case can prevent party from raising issues not argued in prior related appeal). Neither this Court, nor our Supreme Court, has passed upon any of the issues specifically presented in this appeal, and while it would have been preferable for Defendant to have brought these claims in his prior appeal, the doctrine of law of the case does not preclude our review.

{11} Second, upon issuance of our Supreme Court's mandate, remanding the matter to the district court in April 1999, Defendant timely filed a Rule 5–801 NMRA 2000 motion for relief from what he claims is an illegal sentence. With one exception, each of Defendant's claims now presented fall within the jurisdictional scope of this rule, and this Court is therefore vested with jurisdiction to review the remand proceedings. *See State v. Neely*, 117 N.M. 707, 708–09, 876 P.2d 222, 223–24 (1994) (concluding denial of a Rule 5–801 motion is a final, appealable order).

{12} Regarding the one exception-that is, Defendant's claim that the district court erred in denying his motion to recuse-that motion was made on remand and Defendant's appeal therefrom is timely and appropriate. *See State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 119 N.M. 169, 173, 889 P.2d 204, 208 (Ct.App. 1993).

{13} For these reasons, we are not persuaded by the State's argument that this Court cannot hear Defendant's appeal and turn to the merits of each claim presented.

2. *Section 66–8–101(A) manifests a hierarchy of vehicular homicide offenses.*

{14} In *Landgraf*, 1996–NMCA–024, ¶¶ 32, 38, 121 N.M. 445, 913 P.2d 252, this Court recognized that Section 66–8–101 provides the State alternate means for obtaining a conviction; however, it held that if the State obtained convictions on all theories presented to the jury, a single death could only constitute a single homicide. *Accord State v. Pierce*, 110 N.M. 76, 86–87, 792 P.2d 408, 418–19 (1990) (recognizing propriety of charging in the alternative, but requiring merger of redundant convictions). Because the issue was not raised in *Landgraf*, this Court expressed no opinion as to *which* theory—DWI or reckless driving—would take priority. Defendant now raises that precise issue. More specifically, Defendant argues that the statute demonstrates no clear legislative intent that one theory take priority over another and thus—positing that Section 66–8–101 is therefore "irreducibly ambiguous"—the rule of lenity mandates that the lesser offense of reckless-driving-related vehicular homicide be retained in lieu of the DWI—related convictions. We reject Defendant's argument.

{15} Section 66–8–101 provides alternative theories for proving homicide by unlawful operation of a motor vehicle: (a) driving while under the influence of alcohol or drugs, or (b) reckless driving. *See* § 66–8–101(C). No matter the theory by which the State chooses to prosecute, the crime is a third-degree felony. *See id.* By this light alone, it is unclear whether the Legislature intended that one be viewed as a greater public concern and therefore a greater offense.

{16} However, Section 66–8–101(D) provides:

Any person who commits homicide by vehicle or great bodily injury by vehicle while under the influence of intoxicating liquor or while under the influence of any drug, ... who has incurred a prior DWI conviction within ten years of the occurrence for which he is being sentenced ..., shall have his basic sentence increased by two years for each prior DWI conviction.

The statute contains no such similar sentence enhancement applicable to vehicular homicide convictions premised upon reckless driving. Accordingly, the Legislature has made clear its intent to impose a greater penalty for DWI—related violations of the statute, when committed by a recidivist-impaired driver, than for reckless-driving-related violations, regardless of the driving history of the defendant. Defendant's own argument relies upon this same hierarchy of offenses under the statute; that is, while arguing it is impossible to ascertain which is the greater offense, he invokes the rule of lenity as supporting retention of the reckless driving violation as the lesser offense. We conclude that the Legislature viewed DWI—related violations as the graver or more serious offense. As such, the district court appropriately retained the DWI—related convictions. *See State v. Santillanes*, 2000–NMCA–017, ¶ 9, 128 N.M. 752, 998 P.2d 1203 ("[T]he general rule requires that the lesser offense be vacated.").

3. *Each homicide constitutes a separate violation of Section 66–8–101(A).*

■ {17} Section 66–8–101(A) provides: "Homicide by vehicle is the killing of a hu-

man being in the unlawful operation of a motor vehicle." Defendant contends this language fails to unambiguously define the appropriate unit of prosecution. *See State v. Barr*, 1999–NMCA–081, ¶ 17, 127 N.M. 504, 984 P.2d 185. He argues it is not clear from the statute's language whether the Legislature intended to punish *the killing of a human being* by unlawful operation of a motor vehicle or *the unlawful operation of a motor vehicle* that results in the killing of a person. In the shadow of this claimed ambiguity, he argues that the unit of prosecution is the unlawful operation of a vehicle. Since his conduct constituted the unitary act of unlawful operation of a motor vehicle, he argues for the vacation of all but one vehicular homicide conviction.[2] We reject Defendant's position.

{18} In *State v. Irvin*, 603 S.W.2d 121, 123 (Tenn.1980), *cited without discussion in State v. Johnson*, 103 N.M. 364, 374, 707 P.2d 1174, 1184 (Ct.App.1985), the Tennessee Supreme Court affirmed a defendant's multiple convictions for vehicular homicide, premised upon multiple victims, and outlined what has evolved as the majority rule on this issue:

In our opinion, when more than one person is killed, there is more than one homicide-regardless of any fictional "intent" or whether the deaths result from a single "act" or a series of acts. It seems illogical to us, as a general proposition, to hold that when two persons have been killed by an accused, he has committed only one homicide.

{19} An opinion of the California Supreme Court helps clarify the analysis. In *Wilkoff v. Superior Court*, 38 Cal.3d 345, 211 Cal. Rptr. 742, 696 P.2d 134, 137 (1985) (In Bank), the defendant was charged with multiple counts of DWI—not vehicular homicide or grievous bodily injury by vehicle—upon the multiple victims of his alcohol-related car accident. The district court dismissed all but one count of DWI, in adherence to established California precedent. The district attorney appealed, and the California Supreme Court affirmed, noting:

his four separate Section 66–8–101(A) convictions.

---

2. Defendant makes no argument for the merger of his single Section 66–8–101(B) conviction with

Our analysis begins with the recognition that a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute-the gravamen of the offense-has been committed more than once. The act prohibited by [the DWI statute] is the act of driving a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle.... "[T]he question of '*bodily injury*' is only of materiality [under the DWI statute] in that it aggravates the offense.... The fact that there are several victims cannot transform the single act into multiple offenses."

*Id.* at 137 (quoting *People v. Lobaugh,* 18 Cal.App.3d 75, 95 Cal.Rptr. 547, 552 (1971) (Sims, Assoc. J., concurring and dissenting in part)). Applying this analysis to the California vehicular manslaughter statute, the California court then observed:

By way of contrast, we apply the same analysis to the crime of vehicular manslaughter. The actus reus of vehicular manslaughter is homicide—the unlawful killing of a human being. When a defendant commits several homicides in the course of a single driving incident, he or she has committed the act prohibited by the statute several times.... "[I]t is settled that under the manslaughter statutes, each victim represents a separate violation, but that in a prosecution under [the DWI statute], the number of violations does not increase with each additional victim."

*Id.* (Citations omitted.)

■ {20} As these authorities demonstrate, when determining the appropriate unit of prosecution, the focus is upon the prohibited act-or, as the *Wilkoff* Court put it, the "gravamen of the offense." *Id.* at 137. Defendant has failed to cite to any authority, and we have found none, which would hold otherwise. Our review of other jurisdictions considering similar issues reveals that without exception, the subject of punishment of vehicular homicide is the killing of another, not the unlawful operation of a motor vehicle. *See generally State v. Dunlop,* 721 P.2d 604, 609 (Alaska 1986).

{21} We are persuaded by the reasoning behind these opinions and conclude that this approach is consistent with our statute and New Mexico law generally.

{22} First, it is an obvious point to note that the implicated provision's title is "Homicide by vehicle; great bodily injury by vehicle." Section 66–8–101. This suggests that the Legislature's concern in enacting the statute was death and injury caused by vehicle.

{23} Second, Defendant's argument ignores our Supreme Court's opinion in *State v. Yarborough,* 1996–NMSC–068, ¶ 30, 122 N.M. 596, 930 P.2d 131 (recognizing Section 66–8–101 as preempting the general involuntary manslaughter statute where a motor vehicle is the means of the unintentional killing). Implicit in the Court's holding, Section 66–8–101(A) punishes homicide, not unlawful operation of a motor vehicle.

{24} Finally, Defendant's argument largely disregards the general rule that multiple victims will support multiple convictions. *See Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991). As this Court noted in *Johnson,* 103 N.M. at 374, 707 P.2d at 1184:

[W]here there is but a single violent act and multiple victims, the societal harm is greater. And, thus, the greater the harm, the greater the need to deter such conduct. To hold otherwise would encourage single-act-multiple-victim type crimes.... As stated by Justice Traynor in *Neal v. State,* 55 Cal.2d 11, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844 (1960), "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person."

*Accord State v. Moore,* 109 N.M. 119, 128, 782 P.2d 91, 100 (Ct.App.1989), *overruled on other grounds by State v. Salgado,* 112 N.M. 537, 817 P.2d 730 (Ct.App.1991); *Landgraf,* 1996–NMCA–024, ¶¶ 31, 38, 121 N.M. 445, 913 P.2d 252 (recognizing and applying the " 'one death, one homicide conviction' rule").

4. *Section 66–8–101(D) is not unconstitutionally ambiguous.*

{25} Defendant makes a related argument that Section 66–8–101(D), the enhancement

provision, is unconstitutionally ambiguous and that the district court erred in imposing a two-year enhancement for each of Defendant's five convictions under Section 66–8–101. The district court's actions resulted in a ten-year total enhancement. Defendant argues that the rule of lenity requires, in light of the claimed ambiguities, that only the general sentence upon the five counts be enhanced (resulting in a single, two-year enhancement). The argument has no merit.

{26} We adhere to well established rules when reviewing challenges to a criminal statute based upon its claimed ambiguity. We strictly construe criminal provisions, in light of the liberty interests at stake. *See, e.g., State v. Anaya,* 1997–NMSC–010, ¶ 31, 123 N.M. 14, 933 P.2d 223 (noting "highly punitive" nature of habitual offender provision as necessitating strict scrutiny). However, criminal statutes "are not to be subjected to any strained or unnatural construction in order to work exemptions from their penalties." *Ex Parte De-Vore,* 18 N.M. 246, 254, 136 P. 47, 49 (1913), *quoted in State v. Sweat,* 84 N.M. 416, 417, 504 P.2d 24, 25 (Ct.App.1972). " 'Such statutes must be interpreted by the aid of the ordinary rules for the construction of statutes, and with the cardinal object of ascertaining the intention of the legislature.' " *Id.* Without sound reasons to depart from applying these principles, we presume the Legislature relied upon the common meaning of the words used in drafting the subject statute. *See id.* We recognize that where " 'insurmountable ambiguity persists,' " despite reliance upon the established rules of construction, the rule of lenity requires that doubts be construed in a defendant's favor. *State v. Rowell,* 121 N.M. 111, 116, 908 P.2d 1379, 1384 (1995). Upon our review, we conclude Section 66–8–101(D) is not ambiguous. We therefore decide the issue without resort to the rule of lenity.

{27} The enhancement provision states, in pertinent part:

Any person who commits homicide by vehicle or great bodily injury by vehicle while under the influence of intoxicating liquor or while under the influence of any drug, ... who has incurred a prior DWI conviction within ten years of the occurrence for which he is being sentenced ..., shall have his basic sentence increased by two years for each prior DWI conviction.

Regarding this provision, Defendant argues: (a) it is unclear whether "basic sentence" refers to a single sentence entered upon multiple violations of the statute in a single instance or each individual sentence entered upon the several resulting homicides and injuries; (b) it is unclear whether the "occurrence" indicates a legislative focus upon the individual car accident-that is, the single transaction-or upon each homicide or injury, the latter of which would support individualized convictions arising from the single instance or transaction; and finally (c) the statute mandates an enhancement for "each prior" DWI conviction, but in this case, the district court enhanced each of his current, multiple convictions.

{28} Regarding " 'basic sentence,' " *State v. Howard,* 108 N.M. 560, 561, 775 P.2d 762, 763 (Ct.App.1989), quickly disposes of Defendant's argument. Therein, this Court held that where a statute attaches an enhancement to a defendant's " 'basic sentence,' " that statute "requires that the sentence for *each of defendant's current multiple felonies* be enhanced on the basis of the prior felony conviction." *Id.* (emphasis added). Applying this rule to the case at hand, we have already held that Defendant was properly convicted and sentenced upon five felony counts. Each of these counts supports a separate "basic sentence." Accordingly, the statute requires that each basic sentence be enhanced by two years. *See* § 66–8–101(D) (providing each basic sentence "shall" be enhanced upon meeting of prerequisite conditions).

{29} As to "the occurrence for which he is being sentenced," this is also answered by our earlier discussion regarding the unit of prosecution. The occurrences for which Defendant was sentenced were the individual homicides he committed and injuries he caused, not his single act of unlawful operation of a motor vehicle.

{30} And finally, Defendant claims ambiguity in that the statute "is designed to

enhance the punishment once for 'each prior' act of DWI misconduct yet the trial court in this case used it to enhance the punishment for each 'conviction' obtained in this trial." We do not understand this argument as addressing an ambiguity in the statute, per se, but instead, as claiming a misapplication of the enhancement provision in Defendant's case. *See State v. Thomson*, 79 N.M. 748, 752, 449 P.2d 656, 660 (1969) (reviewing issue as argued). Viewing the argument in this manner, we are unpersuaded. As discussed above in reference to *Howard*, the district court appropriately imposed a single enhancement, due to Defendant's single prior DWI conviction, upon each basic sentence. This is not error.

### 5. Section 66–8–101(D) does not violate the Fourteenth Amendment.

{31} Defendant next argues that the district court's application of the enhancement provision violated his constitutional rights to equal protection and due process. For the reasons discussed below, we affirm as to this issue.

### A. Equal protection.

{32} Defendant makes a circuitous argument that our vehicular homicide statute's enhancement provision unconstitutionally violates principles of equal protection. We review Defendant's claim under the rational basis standard of review. *See State v. Neely*, 112 N.M. 702, 708, 819 P.2d 249, 255 (1991) (affirming disparate treatment of mentally ill defendants found insane and those found guilty, but mentally ill, as rationally related to a legitimate state interest); *State v. Vogenthaler*, 89 N.M. 150, 153, 548 P.2d 112, 115 (Ct.App.1976) (determining whether increased criminal punishment for desecration of church, as opposed to other property, passed rational-basis review); *see also Fraternal Order of Police v. United States*, 173 F.3d 898, 901 (D.C.Cir.1999) (noting analysis of disparate treatment of "domestic violence misdemeanants as compared to domestic violence felons" is rational-basis review).

{33} It is difficult to discern which classifications Defendant asserts are similarly situated, yet disparately treated. Defendant appears to claim that Section 66–8–101(D) imposed upon him a greater enhancement-that is, five two-year enhancements, one on each count in light of his prior misdemeanor DWI conviction-than would our general recidivist statute, *see* NMSA 1978, § 31–18–17 (1993), upon the sentence imposed on a three-time felon upon conviction for his or her fourth felony-that is, eight years; (b) treats a one-time DWI misdemeanant more harshly, by imposition of a two-year enhancement, than does our general DWI statute, *see* NMSA 1978, § 66–8–102 (1993), which can impose only an eighteen-month basic sentence upon a fourth DWI conviction; and (c) impermissibly converts a prior misdemeanor into a felony for sentencing purposes.

{34} First, we clarify Defendant's arithmetic. He claims it is irrational that he, a one-time DWI misdemeanant, should receive a ten-year enhancement while a fourth-time felon would receive only an eight-year enhancement. He fails to acknowledge that his enhancement was based not upon imposition of a single enhancement, but five two-year enhancements-one enhancement for each basic sentence. To correct his attempted analogy, a three-time felon subsequently convicted on five felony counts could have his or her total sentence enhanced by forty years, that is, one eight-year enhancement for each of the five basic sentences. Accordingly, the only disparate treatment to which Defendant points, regarding his first argument, redounds to his benefit, not his detriment.

{35} Second, more importantly, Defendant's argument ignores that the Section 66–8–101(D) enhancement solely applies to those convicted of killing or seriously hurting others, while Section 31–18–17 applies universally to recidivist felons, many, if not most, of whom are guilty of non-violent crimes. This is a valid basis for disparate treatment. *See Fraternal Order of Police*, 173 F.3d at 903 ("In the standard equal protection case the legislature is fully entitled to weigh one characteristic more heavily than another. ...").

{36} Further, it is reasonable to surmise that our Legislature recognized recidivist-impaired drivers as having not learned the lesson that such behavior was socially deviant. *See State v. Edmondson*, 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App.1991) (noting recidivists have, by definition, "demonstrated the failure of rehabilitation"). Also, it would be rational for the Legislature to substantially increase the punishment of recidivist-impaired drivers, whose failure to reform their behavior, results in death or injury to others. We fail to see how it is irrational to treat a repeat drunk driver more harshly when his or her DWI-related conduct kills or injures someone, than another driver whose recidivist conduct, by luck or miracle, leaves others unhurt. We, accordingly, hold there is rational basis for the differing punishments prescribed by Sections 66–8–101(D) and 66–8–102(G).

{37} Finally, Defendant asserts that the stacking of prior misdemeanor convictions to create a felony is constitutionally impermissible. Defendant fails to cite any authority discussing the constitutional implications of the conduct he alleges, and further fails to show how the district court committed the wrong he alleges. Nonetheless, we glean from his argument an attempt to correlate his claim with those made in *Anaya*, 1997 NMSC 10, ¶ 33, 123 N.M. 14, 933 P.2d 223; that is, he suggests that no number of misdemeanor convictions can add up so as to constitute a felony. Our response to this argument takes us no further than the ruling in *Anaya* itself: the sum of Defendant's prior convictions comprises a status *for sentencing purposes only.*

**B.** *Due process.*

[17] {38} Defendant argues that his prior DWI conviction was not proven beyond a reasonable doubt, in violation of his constitutional right to due process. He has, however, failed to present a record adequate for our review of the standard of proof upon which the district court relied. *See Drake v. Trujillo*, 1996–NMCA–105, ¶ 18, 122 N.M. 374, 924 P.2d 1386 (noting it is appellant's burden to present record sufficient for this Court's review). At the hearing during which Judge Blackmer imposed Defendant's remand sentence, the court stated that he found "beyond a reasonable" doubt that Defendant had one prior DWI conviction. In so ruling, the court referenced an evidentiary hearing on the matter. Defendant has failed to present, or even cite to, a transcript of that hearing. Accordingly, granting all presumptions in favor of correctness below in the absence of a complete record, Defendant fails to show that the district court applied any standard, but for that to which he claims he was entitled. *See State v. Brown*, 116 N.M. 705, 706, 866 P.2d 1172, 1173 (Ct.App. 1993) ("[O]n a doubtful or deficient record, we presume regularity and correctness in the proceedings below.").

{39} Moreover, Defendant is *not* entitled to the standard of proof he claims. As recently and succinctly noted by both our Supreme Court and the United States Supreme Court, the federal constitution requires only that prior convictions, when used to enhance an underlying sentence, be proven upon a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (exempting fact of prior conviction from its requirement that facts that increase penalty be proven beyond a reasonable doubt); *State v. Smith*, 2000–NMSC–005, ¶ 9, 128 N.M. 588, 995 P.2d 1030. Defendant has not preserved, nor has he made, any challenge under the New Mexico Constitution, and we express no opinion as to whether a different standard applies thereunder.

**6.** *Defendant has waived any appellate challenge regarding his motion to recuse.*

{40} Finally, Defendant challenges the district court's denial of his motion to recuse Judge Blackmer. Defendant captions his argument as a constitutional challenge to the procedure afforded under New Mexico law. However, he makes no substantive argument regarding the alleged insufficiency of our procedure, relying instead primarily upon recitation of general language pertaining to the need for impartial tribunals. He also appears to challenge the ruling below as an abuse of discretion. Nonetheless, he has not presented to this Court a discussion of

428

the facts relevant to our review. He also fails to note that his motion has already been reviewed not only by the district court, but also by our Supreme Court-neither of which discerned any basis for recusal. We deem the matter waived as insufficiently briefed. *See* Rule 12–213 NMRA 2000.

**7.** *Defendant has waived any claim regarding the doctrine of constitutional doubt.*

{41} Finally, Defendant invokes the doctrine of constitutional doubt, which, as Justice Holmes long ago noted, roughly provides that "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *United States v. Jin Fuey Moy,* 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916); *cf. Huey v. Lente,* 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973) (noting courts should avoid unconstitutional construction of statutes). While Defendant has summarily invoked the doctrine, he has failed to apply it to the case before us with even the most remote specificity. Accordingly, we deem any claim regarding it waived. *See* Rule 12–213; *see also State v. Padilla,* 88 N.M. 160, 162, 538 P.2d 802, 804 (Ct.App.1975) (deeming abandoned unclear point in error that failed "to give us a hint as to what he is arguing").

**CONCLUSION**

{42} For these reasons, we affirm the sentence entered below.

{43} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Chief Judge, MICHAEL D. BUSTAMANTE, Judge.