The appellant, Marshall Frank Meyer, was indicted for capital murder, but was convicted of the lesser included offense of the intentional murder of David Lett by shooting him once in the head with a pistol, as defined by § 13A-6-2, Code of Alabama
1975. He was sentenced to 50 years in the state penitentiary.
The evidence tended to show that on June 15, 1987, the appellant and the victim left Sherwood, Michigan, together en route to New Orleans, Louisiana. They were traveling in the victim's automobile. On the way to Louisiana, the two stopped in Newport News, Virginia, so that the victim could visit a friend, T.J. LaBouf. Mr. LaBouf was the last known person to see David Lett alive.
Mr. LaBouf was the State's key witness. During his testimony, Mr. LaBouf was shown a red and white knit pullover shirt marked as State's exhibit three. This shirt was found at the scene where the body was discovered. Mr. LaBouf testified that the shirt appeared to be the same shirt that the appellant was wearing when he and the victim left Virginia.
Shortly before lunch on June 19, 1987, the appellant and the victim left Virginia going south to Louisiana. The route they were to take, according to Mr. LaBouf, passed through Montgomery, Alabama, on Interstate 85. The victim's girlfriend, Carol Andrews, was to meet the two in New Orleans and expected them to arrive on the morning of June 21, 1987.
The appellant and the victim never arrived in Louisiana. The victim's body was found in a remote area in Chilton County, Alabama. His car was discovered in Michigan at the home of Mike Haywood, a friend of the appellant's. Mr. Haywood testified that the appellant borrowed a shop vacuum from him and vacuumed out the car and that the appellant also borrowed some tools so that he could remove the seats from the car and a hose to wash the interior of the car.
The appellant's girlfriend, Wanda Cooper, was with the appellant on several occasions when he withdrew money from the victim's bank account using the victim's automatic teller machine bank card. The appellant told Ms. Cooper "not to tell the police, that it wasn't none of their business." Bank records indicate that beginning on June 22, 1987, a total of $850 was withdrawn from the victim's account.
During the investigation, the appellant was found to be in possession of a brown "trucker's type wallet." Danny Ballard, a friend of the appellant and his business partner, testified that he saw the appellant remove a one-hundred dollar bill from the wallet. The appellant's parents had never seen the wallet. Dale Stensland, an employee of Swans Ice Cream and Frozen Food Company, testified that the wallet was identical to the one issued to the victim when he worked at that company in 1987.
When police began their investigation of the murder of David Lett, the appellant was their prime suspect. They questioned him on several occasions concerning how he ended up in Michigan with the victim's car. The appellant's first version of his return was that he did not know where David was and that he had returned from Richmond, Virginia, by bus. Michigan State Trooper Jeffrey Whelan, the investigating officer, asked the appellant to produce his bus tickets; however, a week later the appellant said that he did not have them and had not even looked for them.
Next, the appellant told Trooper Whelan that he had taken a bus from Richmond to Pittsburgh, Pennsylvania, and that a friend named "Junkyard Dan" or "Junkie Dan" had picked him up there and taken him back to Michigan. When the police questioned "Junkie Dan" Ballard, he verified the story. However, a week later, he told the police that the appellant had asked him to lie to the police and that he had never taken the appellant anywhere.
In yet another version, the appellant told his girlfriend, Wanda Cooper, that he had hitchhiked back to Michigan. He later told her that he had come back by bus. Finally, he told her he had driven David's car back but gave her no explanation as to why. *Page 1214 
Finally, in the appellant's taped statement to Michigan law enforcement officers, the appellant said that he and the victim stopped in Richmond after leaving Newport News so that David could buy drugs to take back to Michigan. The appellant said that David drove to the parking lot of a bar and told him to wait inside the bar until he returned. The appellant said that the victim then left with another man in a black van. The appellant claims that he waited approximately eight hours for the victim to return and when he did not, the appellant took the victim's car and drove back to Michigan.
The appellant raises three issues on appeal.
 I
The appellant's first contention is that the trial court erred in denying his motion for a directed verdict of acquittal and to exclude the State's evidence and in denying his motion for a new trial in that the State failed to prove a prima facie case. He supports this contention with two theories. He claims that the State failed to adequately prove that venue was correct in Alabama. In the alternative, the appellant argues that the State's evidence was insufficient to sustain a conviction because it was circumstantial in nature.
"Proof of venue is necessary to sustain a conviction, and like any other fact in the case, when there is evidence in the case tending to prove that the offense was committed within the jurisdiction of the court, the question of venue becomes a fact for the jury to decide." Grace v. State, 369 So.2d 318, 322
(Ala.Cr.App. 1979), citing, § 15-2-7, Code of Alabama 1975; See also Porter v. State, 520 So.2d 235 (Ala.Cr.App. 1987); Creechv. State, 508 So.2d 302 (Ala.Cr.App. 1987). "In a criminal case, proof of venue is sufficient if it can be reasonably inferred from the facts and circumstances adduced." Coleman v.State, 423 So.2d 276 (Ala.Cr.App. 1982). Moreover, venue need not be established solely by direct evidence but rather, evidence from which it may be inferred is sufficient. Id.
The issue in the case at bar is whether the fact that a dead body found in Chilton County, Alabama, is sufficient evidence from which to infer venue in Chilton County. In Coleman, supra, a body was found on a mountain in Madison County, Alabama, very near the Tennessee State line. It was uncertain whether the murder occurred in Alabama or in Tennessee. The court held that since it was conceivable that the murder could have occurred in either state, venue would be established in the state where the body was found. Id. Thus, in the case at bar, the State's evidence was sufficient to prove venue, and the Circuit Court for Chilton County had jurisdiction to hear the appellant's case.
The appellant's alternative theory must likewise be rejected by this court. In P.S. v. State, 565 So.2d 1209
(Ala.Cr.App. 1990), this court held:
 "The mere fact that evidence is of a circumstantial nature does not make it deficient. Linzy v. State, 455 So.2d 260, 262
(Ala.Cr.App. 1984). Further, such evidence should be reviewed by this court in the light most favorable to the State, Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975), and our judgment should not be substituted for that of the jury. Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
P.S., supra, 565 So.2d at 1212. By applying the cases set out above, we find that the jury could have been convinced beyond a reasonable doubt of the appellant's guilt from the evidence presented, even though it was circumstantial in nature. Thus, for this reason and the reason previously discussed, the trial court correctly denied the appellant's motion for a directed verdict of acquittal and to exclude the State's evidence and his motion for a new trial.
 II
Next, the appellant contends that the trial court incorrectly charged the jury on reasonable doubt. However, when defense counsel objected to the court's oral charge, he simply said, "For the record, Your Honor, we object to the Court's *Page 1215 
charge on reasonable doubt." This is insufficient to preserve this issue for appellate review.
The correct method of objecting to the trial court's oral charge to the jury is set forth in Temporary Rule 14, A.R.Crim.P., as follows:
 ". . . No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. . . ."
The appellant has failed to preserve this issue for review because he did not object to the trial court's oral charge with specificity. See Ex parte State, 497 So.2d 201 (Ala. 1986). Thus, nothing is preserved for our review.
 III
Finally, the appellant contends that the trial court erred in denying his motion for a new trial on the grounds that the jury's verdict was contrary to law and the evidence. More specifically, the appellant argues that by the jury's returning a guilty verdict of the lesser included offense of murder in all three counts of the indictment, he was, in effect, found guilty of murdering David Lett three separate times.
The appellant was charged with capital murder in a three-count indictment. Count one reads as follows:
 "The Grand Jury of said county charged before the finding of this indictment, Marshall Frank Meyer, whose true name is to the Grand Jury unknown, otherwise than is stated, did intentionally cause the death of David Lett by shooting him with a pistol and the said Marshall Frank Meyer caused said death during the time that Marshall Frank Meyer was in the course of committing a theft of a 1980 Chevrolet Camaro automobile, the property of David Lett, by the use of force against the person of David Lett with intent to overcome his physical resistance, while the said Marshall Frank Meyer, was armed with a deadly weapon, to-wit: A pistol, in violation of § 13A-5-40(a)(2) of the Code of Alabama (1975), against the peace and dignity of the State of Alabama."
Count two reads as follows:
 "The Grand Jury of said county charged that before the finding of this indictment, that Marshall Frank Meyer did intentionally cause the death of David Lett by shooting him with a pistol and the said Marshall Frank Meyer caused said death during the said time that Marshall Frank Meyer was in the course of committing a theft of an automatic teller machine card, the property of David Lett, by the use of force against the person of David Lett with intent to overcome his physical resistance or physical power of resistance, while the said Marshall Frank Meyer was armed with a deadly weapon, to wit: A pistol, in violation of § 13A-5-40(a)(2) of the Code of Alabama (1975), against the peace and dignity of the State of Alabama."
Count three reads as follows:
 "The Grand Jury of said county charged before finding of this indictment, that Marshall Frank Meyer did intentionally cause the death of David Lett by shooting him with a pistol and the said Marshall Frank Meyer caused said death during the time that Marshall Frank Meyer was in the course of committing a theft of $4,500.00 in lawful currency, a better description of said money is otherwise unknown to the Grand Jury, the property of David Lett, by the use of force against the person of David Lett with intent to overcome his physical resistance or physical power of resistance, while the said Marshall Frank Meyer was armed with a deadly weapon, to wit: A pistol, in violation of § 13A-5-40(a)(2) of the Code of Alabama (1975), against the peace and dignity of the State of Alabama."
The court's oral charge to the jury included the following:
 "I think y'all have got that. In order to sustain a capital offense in this case, the State must prove to you an intentional murder committed by the defendant *Page 1216 
during the course of a robbery or an attempt thereof.
 "Now, after you've considered the evidence in the case, if you find that the State has failed to prove to you beyond a reasonable doubt and to a moral certainty the capital offense or offenses charged, then you should consider the lesser-included offenses, which are unwritten but included offenses that I went over with you that definition a while ago, which are non-capital offenses.
 "In this case, there are two in each count. There are two possible lesser-included offenses which are non-capital offenses. One is intentional murder, and the other is robbery in the first degree.
". . . .
 "In order to sustain a charge of intentional murder, the State must prove to you beyond a reasonable doubt and to a moral certainty one, that David Lett is dead; two, that Marshall Frank Meyer, three, with the intent to cause the death of David Lett, four, caused the death of David Lett. That applies to each of the three counts.
 "The other, as I told you, is robbery in the first degree. The same elements apply to robbery in the first degree. And those elements are one, Marshall Frank Meyer two, in the course of committing a theft of a 1980 Chevrolet Camaro; Count 2, the course of committing a theft of an ATM card, automatic teller machine card — my wife used to work for the bank. I do the abbreviation, and I apologize — three, in the course of committing a theft of forty-five hundred dollars. The third element — used force with an intent to overcome the physical resistance or physical power of resistance of David Lett, four, was armed with a deadly weapon or dangerous instrument or caused serious physical injury."
At the close of the evidence and after the court's charge to the jury, the jury deliberated and returned the following verdict as to count one: "We, the jury, find the appellant, Marshall Frank Meyer, guilty of intentional murder as embraced in the indictment." As to count two, the jury found:
"We, the jury, find the appellant, Marshall Frank Meyer, guilty of intentional murder as embraced in the indictment." As to count three, the jury found: "We, the jury, find the defendant, Marshall Frank Meyer, guilty of intentional murder as embraced in the indictment."
Prior to the trial court's imposing sentence, defense counsel made the following motion and the trial court ruled as follows:
 "MR. HILL: Judge, if you could before you enter sentence, we have one motion we would like to bring to the Court's attention that we have not previously.
 "In this particular case the jury has found the defendant guilty of three separate counts of Intentional Murder of the same individual. We think that violates his double jeopardy provisions of the United States Constitution and would argue that the finding of the jury was inconsistent both [with] the law and the facts of the case and don't think this individual three times can be found guilty of murdering the same individual, and I don't believe it is a valid jury verdict for which he can be sentenced. We would move for a judgment notwithstanding the verdict or a preliminary motion for new trial. Actually it is a rather unusual motion, but I think given that fact I'm not sure it is a legal and lawful judgment upon which he can be sentenced.
 "THE COURT: Okay. I understand your motion. I deny the motion for the following reasons:
 "I don't think that Mr. Meyer can be sentenced three times for the killing of one person. I think that the conviction as to three separate counts would stand. Notice I'm not citing any authority on that. But I think that it would be inappropriate and improper for me to impose three separate sentences. I have not contemplated doing that and I will not do that. But your exception to my ruling and your motion for the record. . . ." *Page 1217 
The trial court subsequently sentenced the appellant to 50 years in the state penitentiary.
The guarantee against twice being placed in jeopardy for the same offense protects (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense. North Carolina v. Pearce,395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The appellant's convictions and sentence concern the third of these guarantees.
The appellant was indicted for three separate offenses. Though the appellant was indicted for three counts of capital murder, he was ultimately convicted for three counts of the lesser included offense of intentional murder. These three counts were contained in the same statute. An evaluation of the case under Sisson v. State, 528 So.2d 1159 (Ala. 1988), shows that the appellant could not have been convicted of three counts of the same statute. As this court stated in Sisson, "[T]he two subsections of a similar statute were merely alternative methods of proving the same crime, and therefore, did not constitute separate offenses." Sisson,528 So.2d at 1162. Thus appellant's conviction on three counts of intentional murder violated the protection against double jeopardy guaranteed to him by the constitution.
The state argues that since the appellant was only sentenced once, to 50 years' imprisonment, the error is harmless. We do not agree with this argument. The United States Supreme Court stated in Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668,84 L.Ed.2d 740 (1985):
 "The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense."
 "The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment."
Ball, 470 U.S. at 864-65, 105 S.Ct. at 1673.
For the reasons stated above, this case is remanded to the Circuit Court for Chilton County for that trial court to vacate two of the appellant's convictions. The two convictions vacated shall be determined by the trial judge.
REMANDED WITH DIRECTIONS.
All the Judges concur.