Tellis Banks was indicted for two counts of capital murder, violations of §§ 13A-5-40(a)(17) and 13A-5-40(a)(18), Ala. Code 1975, and one count of discharging a weapon into an occupied vehicle, a violation of § 13A-11-61, Ala. Code 1975. The jury convicted Banks of two counts of intentional murder, as lesser offenses included in the capital-murder charges, and one count of discharging a weapon into an occupied vehicle. The trial court sentenced Banks to 40 years' imprisonment for each of the murder convictions and to 20 years' imprisonment for the discharging-a-weapon conviction, and ordered that the sentences run concurrently.
Banks does not contend that the State failed to establish a prima facie case. Therefore, a brief rendition of the facts will suffice. Banks and other individuals were involved in a drug-related feud in 2000, which resulted in an exchange of gunfire on more than one occasion. On October 18, 2000, Banks and some friends were at Mattie Bledsoe's house in Chambers County when two individuals in a Honda Accord automobile sped by Bledsoe's house and fired several shots into the house. Banks and his friends — Brandon Bledsoe, John Bledsoe, and Ira Bledsoe — got into Banks's truck and pursued the Honda Accord, but they lost sight of it. After losing sight of the Honda Accord, Banks and his friends came upon another automobile, a Dodge Colt, which, according to Banks, had also been involved in the drive-by shooting at the Bledsoe residence. Banks and John Bledsoe began firing their weapons at the vehicle. Charlie Carter got out of the vehicle and was shot in the chest; Carter died as a result of the injuries he received. Banks and the Bledsoes disposed of the weapons they used. Banks was arrested the next day, and he confessed to his involvement in the shooting and killing of Carter.
 I.
Banks first contends that his two murder convictions and resulting sentences violated the Fifth Amendment's prohibition against double jeopardy and Blockburger v. United States,284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Banks argues that because the convictions arise out of a single incident and involve a single *Page 1225 
victim, he could be convicted and sentenced for only one count of intentional murder. The State agrees, noting that the trial court erroneously sought to remedy the double-jeopardy violation by sentencing Banks to concurrent prison terms.[1]
Banks was indicted in separate counts of a single indictment for capital murder. Under count I, Banks was indicted for killing Charlie Carter with a firearm, while Carter "was inside a vehicle," in violation of § 13A-5-40(a)(17). Under count II, Banks was indicted for killing Charlie Carter with a firearm, which Banks discharged "within or from a vehicle," in violation of § 13A-5-40(a)(18). (C. 11.) The jury was provided with a jury-verdict form that allowed it to find Banks "guilty of Capital Murder as charged in Count I of the indictment (Murder while Shooting Into An Occupied Vehicle)," "guilty of Capital Murder as charged in Count II of the indictment (Murder while Shooting From An Occupied Vehicle)," "guilty of Murder" or "guilty of Manslaughter" under both counts, or "not guilty" under both counts. The jury found Banks "guilty of Murder" under count I and "guilty of Murder" under count II. (C. 125-26.)
Banks and the State agree that the jury convicted Banks for two counts of intentional murder under § 13A-6-2(a)(1), Ala. Code 1975, based upon the trial court's instructions to the jury. Under § 13A-6-2(a)(1), "[a] person commits the crime of murder if . . . [w]ith intent to cause the death of another person, he causes the death of that person or of another person."
In Ex parte Robey, 920 So.2d 1069 (Ala. 2004), the Alabama Supreme Court recently addressed a similar situation. Robey was convicted of one count of reckless murder and two counts of first-degree assault. Robey argued on appeal that he could not be convicted of two counts of first-degree assault because there was only one victim and because the injuries to the victim arose out of the same event. The convictions were the result of Robey's, while intoxicated, driving head-on into a vehicle in which the victims were passengers. One of the victims, Reese, was killed; the other victim, McNabb, was seriously injured. Id. at 1070-71.
The State prosecuted Robey under two separate subsections of §13A-6-20(a), Ala. Code 1975, for assaulting McNabb. The State conceded that one of the counts was due to be dismissed. The Alabama Supreme Court agreed and stated:
 "We conclude that the offense of first-degree assault under § 13A-6-20(a)[, Ala. Code 1975,] `may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt.' [Ex parte] Rice, 766 So.2d [143,] 150 [(Ala. 1999)]. We have found no indication that the Legislature intended to impose multiple punishments under the separate subsections of § 13A-6-20(a) when the actions described in each of those subsections are based on the same conduct of the accused, as well as the same injuries to the same victim. Therefore, punishing Robey twice for the same offense — first-degree assault — violated his double-jeopardy rights."
Id. at 1071. See also Craig v. State, 893 So.2d 1250, 1256
(Ala.Crim.App. 2004) (holding *Page 1226 
that defendant could not be convicted for two counts of robbery where robbery of dry-cleaning clerk, though occurring twice, was part of "one continuous act of robbery").
However, in Ex parte Peraita, 897 So.2d 1227, 1236 (Ala. 2004), the Supreme Court held that Peraita could be convicted of two counts of capital murder for the killing of a single victim. Peraita, an inmate at Holman Prison, killed a fellow inmate. The State indicted Peraita under two separate provisions of the capital-murder statute, § 13A-5-40(a)(6), Ala. Code 1975, "which classifies as a capital offense `[m]urder committed while the defendant is under sentence of life imprisonment,'" and §13A-5-40(a)(13), Ala. Code 1975, "which classifies as a capital offense `[m]urder by a defendant who has been convicted of any other murder in the 20 years preceding the crime.'" Id. at 1230. In affirming both convictions, the Alabama Supreme Court wrote:
 "The State charged Peraita with two counts of capital murder for the death of one individual. Peraita argues that this `double charging' violated his right not to be subjected to double jeopardy.
 "Peraita argues that both state and federal law prohibit a state from subjecting a defendant to double jeopardy, and that the indictment charging him sought to exact `multiple prosecutions' for the same offense. Blockburger v. United States, 284 U.S. 299
(1932).
 "The Blockburger test is aimed at, among other things, `"multiple punishments imposed in a single prosecution."' Grady v. Corbin, 495 U.S. 508, 516-17 (1990) (quoting Garrett v. United States, 471 U.S. 773, 778 (1985)). Peraita argues that conviction of two counts of capital murder for the killing of a single person constitutes such multiple punishment. He cites Meyer v. State, 575 So.2d 1212
(Ala.Crim.App. 1990), and Ex parte Rice, 766 So.2d 143 (Ala. 1999), for the proposition that multiple charges from the same statute violate double-jeopardy principles.
 "The defendant in Meyer was charged with capital murder and indicted for three counts of capital murder for the killing of one person. His indictment alleged that he committed the murder while committing robbery of three separate items. The Court of Criminal Appeals held that these three allegations were merely three `"alternative methods of proving the same crime, and therefore, did not constitute separate offenses."' Meyer, 575 So.2d at 1217
(quoting Sisson v. State, 528 So.2d 1159, 1162
(Ala. 1988)).
 "In Rice, the defendant was charged with two counts of capital murder for the killing of one individual during a robbery and a kidnapping; he was convicted of two counts of `the crime of murder' under Ala. Code 1975, § 13A-6-2(a)(3), specifically the lesser-included offense of felony murder. This Court held that, much like Meyer and Sisson, each count in Rice was an alternative method of proving but a single crime.
 "In contrast to Meyer and Rice, the two capital-murder charges against Peraita are separate offenses. Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, `The following are capital offenses.' Ala. Code 1975, § 13A-5-40(a). So long as each count of the crime concerns a separate offense, as opposed to a separate method of proving that offense, the double-jeopardy provision of the United States Constitution is not implicated. We hold that Peraita's right to be free from double jeopardy was not violated by his having been tried and convicted *Page 1227 
of two counts of capital murder for the killing of one individual."
Id. at 1236.
The Supreme Court cited Ex parte Rice, 766 So.2d 143 (Ala. 1999), in both Robey and Peraita. The facts of the case currently before us are strikingly similar to those in Rice.
The defendant in Rice was indicted for two counts of capital murder — for murder-kidnapping under § 13A-5-40(a)(1) and for murder-robbery under § 13A-5-40(a)(2). He was convicted of two counts of the lesser-included offense of felony murder, pursuant to § 13A-6-2(a)(3). "The jury specifically found Rice guilty of a felony murder committed during a kidnapping and of a felony murder committed during a robbery." Rice, 766 So.2d at 145. The Supreme Court determined that the defendant could not be convicted for two counts of felony murder. The Court stated:
 "The language used by the Alabama Legislature in § 13A-6-2(a)(3) is clear and unambiguous. Section 13A-6-2(a)(3) defines one criminal offense — murder. A `murder,' within the definition of § 13A-6-2(a)(3), may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt. This Court held in Sisson v. State, 528 So.2d 1159 (Ala. 1988), that when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense. Because we are dealing here with a single statute (§ 13A-6-2(a)(3)) that defines a single offense, the Blockburger test is not applicable. See, e.g., Sanabria v. United States, 437 U.S. 54, 70, n. 24, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (`Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called "same evidence" test, which is frequently used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes').
 "The sole remaining question is whether the Legislature has clearly expressed an intent to impose two life sentences for one murder. Our research has disclosed nothing that would indicate an intent on the Legislature's part to authorize the imposition of separate sentences corresponding to each method by which the offense stated in § 13A-6-2(a)(3) may be committed. In this regard, the Legislature has done nothing more than classify the offense of `murder' as a class A felony, and it has authorized only one sentence of imprisonment for that offense — `life or not more than 99 years or less than 10 years.'
 "Based on what we have stated above, we conclude that the trial court erred in adjudging Rice guilty of two murders and in sentencing him twice for his violation of § 13A-6-2(a)(3). Our conclusion is consistent with decisions of the Court of Criminal Appeals holding that a defendant who commits one killing generally cannot legally be convicted and sentenced for two murders, see, e.g., Rolling v. State, 673 So.2d 812
(Ala.Crim.App. 1995); Meyer v. State, 575 So.2d 1212 (Ala.Crim.App. 1990); Coral v. State, 628 So.2d 954 (Ala.Crim.App. 1992), aff'd, 628 So.2d 1004
(Ala. 1993); Loggins v. State, [771 So.2d 1070] (Ala.Crim.App. 1999)[, aff'd, 771 So.2d 1093 (Ala. 2000)]. It is also consistent with the decisions of other jurisdictions that have addressed the issue, see, e.g., Gray v. State, 463 P.2d 897, 911 (Alaska 1970) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Arnett, *Page 1228 158 Ariz. 15, 19-20, 760 P.2d 1064, 1068-69 (1988) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Lowe, 660 P.2d 1261, 1269-71 (Colo. 1983) (holding that a defendant cannot be convicted of both murder after deliberation and felony murder); State v. Chicano, 216 Conn. 699, 705-11, 584 A.2d 425, 429-31
(1990) (holding that a defendant cannot be convicted of both felony murder and first-degree manslaughter as a lesser included offense of intentional murder); State v. Lewis, 245 Conn. 779, 818, 717 A.2d 1140, 1161 (1998) (holding that a defendant cannot be convicted of both murder and felony murder); Gaskin v. State, 591 So.2d 917, 920 (Fla. 1991), vacated on other grounds, 505 U.S. 1244, 113 S.Ct. 22, 120 L.Ed.2d 948 (1992) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); Pressley v. State, 235 Ga. 341, 219 S.E.2d 418 (1975) (holding that a defendant cannot be convicted of both malice murder and felony murder); Chavez v. State, 534 N.E.2d 731, 739 (Ind. 1989) (holding that a defendant cannot be convicted of both murder and felony murder); People v. Pitsonbarger, 142 Ill.2d 353, 154 Ill.Dec. 562, 568 N.E.2d 783, 792
(1990) (holding that a defendant cannot be convicted of both intentional murder and felony murder), vacated on other grounds; State v. Gilroy, 199 N.W.2d 63, 68 (Iowa 1972) (holding that a defendant cannot be convicted of both premeditated murder and murder in perpetration of robbery); State v. Sullivan, 224 Kan. 110, 112, 578 P.2d 1108, 1111-12
(1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Dechaine, 572 A.2d 130, 136 (Me. 1990) (holding that a defendant cannot be convicted of both intentional or knowing murder and depraved-indifference murder); Wooten-Bey v. State, 308 Md. 534, 520 A.2d 1090, 1092 (1987) (stating that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Densmore, 87 Mich.App. 434, 440-41, 274 N.W.2d 811, 814 (1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Grayson, 546 N.W.2d 731, 739 (Minn. 1996) (holding that a defendant cannot be convicted of two variations of murder); State v. White, 254 Neb. 566, 577 N.W.2d 741, 745-48 (1998) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Watson, 261 N.J.Super. 169, 618 A.2d 367, 373 (1992) (holding that a defendant cannot be convicted of both purposeful and knowing murder and felony murder); State v. Wilson, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Huertas, 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1066 (1990) (holding that a defendant cannot be convicted of both aggravated murder with prior calculation and design, and aggravated murder in the course of aggravated burglary); State v. White, 549 N.W.2d 676, 681
(S.D. 1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Hurley, 876 S.W.2d 57, 69-70
(Tenn. 1993) (holding that a defendant cannot be convicted of both premeditated murder and felony murder), superseded by statute; Ervin v. State, 991 S.W.2d 804 (Tex.Crim.App. 1999) (holding that a defendant cannot be convicted of both manslaughter and intoxication manslaughter); Clagett v. Commonwealth, 252 Va. 79, 95-96, 472 S.E.2d 263, 273
(1996) (holding that a defendant who killed more than one person cannot, as to each victim, be convicted *Page 1229 
of capital murder for the murder of multiple persons); Byrd v. United States, 510 A.2d 1035, 1036-37 (D.C.App. 1986, en banc) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); cf., State v. Landgraf, 121 N.M. 445, 453, 913 P.2d 252, 261-62 (App. 1996) (holding that a defendant cannot be convicted of two variations of vehicular homicide)."
Rice, 766 So.2d at 150-52.
Like the defendant in Rice, Banks could not be convicted of two counts of intentional murder under the same statutory provision, § 13A-6-2(a)(1), where there was only one victim. The fact that Banks was sentenced to concurrent 40-year terms of imprisonment does not remedy the double-jeopardy violation.Rice, 766 So.2d at 152. As a result, we reverse the judgment of the trial court and remand this case with directions to the trial court to set aside one of the murder convictions and the resulting sentence.
 II.
Banks also raises other arguments that we now address. First, Banks, who is black, contends that the trial court erred by denying his Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), challenge. The jury venire consisted of 48 individuals, after the trial court released several veniremembers for cause. Of the 48 potential jurors, 20 were black. Banks notes that the percentage of black people on the final venire (41.7%) was more than representative of the black-to-white ratio in Chambers County (38.1%). The State used 13 of its 18 peremptory strikes to remove blacks from the jury panel. The final jury was comprised of 8 whites and 4 blacks, meaning that 33.3% of the jury was black. (C. 122-23.)
After the venire was struck, Banks objected to the composition of the jury, contending that the State's use of its peremptory challenges constituted a Batson violation. Counsel stated: "[T]he State has diluted the members of the black race from this jury." (R. 69.) The court noted: "Beyond that, you need to establish your prima facie [case]." (R. 70.) Counsel then listed each of the State's 18 peremptory challenges, noting that 13 of the 18 strikes had been used to remove black jurors. At this point, the trial court asked Banks if he knew of a situation where two jurors were similarly situated, and the black juror was struck but the white juror was not. Banks cited an instance in which two female jurors were alleged to have been similarly situated in that neither juror answered any voir dire questions beyond the initial identification phase.[2] However, Banks conceded that he did not know of a situation where jurors were treated differently based upon their answers to voir dire questions. Banks further noted that he was not arguing "disparate treatment." At that time, the following transpired:
 "THE COURT: What we're talking about then is percentages?
"[DEFENSE COUNSEL]: Yes, sir.
 "THE COURT: I don't claim to know the most recent cases on Batson. But at one point there was a case or two that said just showing a percentage was not proof of a prima facie case, that something *Page 1230 
else had to be shown. Because the percentage difference is not great in this case and because I don't think any other factors have been shown, I'm going to deny the Batson motion."
(R. 72.)
"We will reverse the circuit court's ruling on the Batson
motion only if it is `clearly erroneous.' Jackson v. State,549 So.2d 616 (Ala.Cr.App. 1989)." Cooper v. State, 611 So.2d 460,463 (Ala.Crim.App. 1992).
 "Alabama courts have recently held that even a showing that [a] party had struck a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick, 698 So.2d 162, 168
(Ala. 1997), the Alabama Supreme Court held, `Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.'"
Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App. 1997). InWoods v. State, 845 So.2d 843, 844-45 (Ala.Crim.App. 2002), we wrote:
 "The 27-person venire included 15 blacks. The State used five of its seven strikes to remove blacks. Woods made a timely objection at trial, and argued that the State struck five blacks. Woods claimed that, in his opinion, the State had struck the five blacks because of race, and he asked the court to require the State to provide a race-neutral reason for each strike. Woods did not offer any additional evidence to support his Batson motion, and the trial court denied it.
 "The party claiming a Batson violation must first establish a prima facie case of discrimination before the other side is required to state its reasons for its peremptory strikes. See Ex parte Pressley, 770 So.2d 143, 145 (Ala. 2000); Stokes v. State, 648 So.2d 1179, 1180 (Ala.Crim.App. 1994). While `[c]ircumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury,' Woods has offered no such evidence, and eight blacks remained on the venire following the peremptory strikes by both sides. Ex parte Branch, 526 So.2d 609, 623
(Ala. 1987). It is undisputed that the State used five of its seven strikes to remove blacks from the venire. However, statistics and opinion alone do not prove a prima facie case of discrimination. See Johnson v. State 823 So.2d 1 (Ala.Crim.App. 2001).
 "The trial court noted when it denied Wood[s]'s Batson motion that the prosecutors in his case had not displayed a history of discriminatory strikes in previous trials in that courtroom. Woods failed to make a prima facie case of discrimination, so the trial court's ruling on the Batson motion was not clearly erroneous. Therefore, Wood[s]'s claim is without merit."
We agree with the trial court that in this case Banks failed to satisfy his initial burden. Therefore, the trial court's failure to require the State to provide its reasons for striking 13 black veniremembers was not error.
 III.
Lastly, Banks argues that the trial court erred by failing to grant a new trial or to give a corrective instruction based upon what he alleges was prosecutorial misconduct. At trial, there was a dispute about whether there was a second person in the Dodge Colt automobile at which Banks and John Bledsoe fired their weapons. During closing arguments, the prosecutor made reference to a "car key" removed from the victim's "personal effects" *Page 1231 
after his death. Banks contends that the prosecutor's comment was intended to imply that the victim, Carter, had the key to the Dodge in his pocket in order to establish that Carter was inside the vehicle when he was shot by Banks. After the prosecutor mentioned the keys found among Carter's personal effects, Banks's counsel objected stating: "Object, your Honor. Those are house keys, it's not a car key." (R. 367.) The trial court responded that "[i]t will be for the jury to decide whatever evidence there is." (R. 367-68.) After the prosecutor concluded the first phase of his closing argument, out of the hearing of the jury, defense counsel accused the prosecutor of making a "blatantly false" comment about the keys and requested a mistrial. (R. 375-76.) The trial court responded that the prosecutor's "argument was an inference from the evidence," and it denied the motion for mistrial. (R. 376.)
During his closing argument, defense counsel argued to the jury that the State was desperate to prove that Banks had committed capital murder and that that was why the prosecutor tried to argue that one of the keys found in Carter's pocket was the key to the Dodge. Defense counsel further argued that the key to the Dodge Colt was not found and that there was not a second person present when Banks and the Bledsoes encountered Carter. (R. 383-84.)
In his rebuttal, the prosecutor responded to defense counsel's closing remarks by stating:
 "I want to apologize to [defense counsel] and to the Court and to you if maybe my statement was too strong about the keys. And I apologize if it was. I was trying to argue an inference from the evidence that there were keys found. I do not know where those keys were from. I do not know if they go to the car or not. . . ."
(R. 398.)
We first note that Banks did not request a curative instruction, either at the time he made his objection or after the prosecutor completed his initial closing argument. "Review on appeal is limited to review of questions properly and timely raised at trial." Newsome v. State, 570 So.2d 703, 716
(Ala.Crim.App. 1989).
As for Banks's contention that the trial court should have granted a mistrial, we have often stated that "a mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice." Ex parte Thomas, 625 So.2d 1156, 1157
(Ala. 1993). "`[T]he propriety of argument of counsel to the jury depends upon the particular issues, fact, and atmosphere of each case.'" McNair v. State, 653 So.2d 320, 339 (Ala.Crim.App. 1992), aff'd, 653 So.2d 353 (Ala. 1994), quoting Bryson v.State, 264 Ala. 111, 114, 84 So.2d 785, 788 (1955). Recently, we stated:
 "`"`During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.'" Reeves v. State, 807 So.2d 18, 45 (Ala.Crim.App. 2000), quoting Rutledge v. State, 523 So.2d 1087, 1100
(Ala.Crim.App. 1987) (citation omitted), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988).
 "`"`The test of a prosecutor's legitimate argument is that whatever is based on facts and evidence is within the scope of proper comment and argument. Kirkland v. State, 340 So.2d 1139 (Ala.Crim.App.), cert. denied, 340 So.2d 1140 (Ala. 1976 [1977]). Statements based on facts admissible in evidence are proper. Henley v. State, 361 So.2d 1148 *Page 1232 
(Ala.Crim.App.), cert. denied, 361 So.2d 1152 (Ala. 1978). A prosecutor as well as defense counsel has a right to present his impressions from the evidence. He may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way. Williams v. State, 377 So.2d 634 (Ala.Crim.App. 1979); McQueen v. State, 355 So.2d 407 (Ala.Crim.App. 1978).'"
 "`Ballard v. State, 767 So.2d 1123, 1135
(Ala.Crim.App. 1999), writ quashed, 767 So.2d 1142
(Ala. 2000), quoting Watson v. State, 398 So.2d 320, 328 (Ala.Crim.App. 1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).'
 "Johnson v. State, 823 So.2d 1, 47 (Ala.Crim.App. 2001)."
Minor v. State, 914 So.2d 372, 426 (Ala.Crim.App. 2004).
While we agree that, in order to prove that the murder was a capital murder under § 13A-5-40(a)(17) ("[m]urder committed by or through the use of a deadly weapon while the victim is in a vehicle"), the State needed to establish that Carter was in the Dodge Colt when he was shot. We fail to see how the fact that Carter may have had a key to the car in his pocket either definitively proves or disproves that fact. Further, whether Carter had a key to the Dodge in his pocket at the time he was shot by Banks is not dispositive of the question of whether there was a second person in the Dodge when it was approached by Banks and the Bledsoes.
More importantly, however, it is clear that the jury did not give credence to the prosecutor's comment about the keys, because the jury did not find Banks guilty of capital murder, but instead found him guilty of murder under § 13A-6-2(a)(1), which provides: "A person commits the crime of murder if . . . [w]ith intent to cause the death of another person, he causes the death of that person or of another person." Banks concedes that the evidence presented by the State established that Banks killed Carter. As a result, even if the prosecutor's comment was improper, when considered in context of the entire case, any prejudice caused to Banks was, at most, harmless. See Rule 45, Ala.R.App.P. ("[A]fter an examination of the entire case, it [does not] appear that the error complained of has probably injuriously affected substantial rights of the [defendant].").
In summary, the trial court did not err in its rulings as they pertain to the Batson challenge and to the alleged prosecutorial misconduct. We, however, reverse the trial court's sentencing Banks for two counts of murder, and we remand this case with directions to the trial court to set aside one of the murder convictions and the sentence associated with that conviction. Due return shall be made to this Court within 56 days of the release of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and COBB and SHAW, JJ., concur. BASCHAB, J., concurs in the result.
[1] In its sentencing order, the trial court wrote: "It is the judgement and sentence of the court that you be . . . sentenced to the penitentiary of the State of Alabama for a term of forty (40) years in regard to each of the Murder counts. Because thevictim in each count is the same[,] those sentences will run concurrently." (Emphasis added.) (C. 145.)
[2] We note that the two jurors referenced were Juror 148, a black female whose date of birth was October 27, 1961, and Juror 48, a white female whose date of birth was March 22, 1935. Moreover, our review of the record reveals that, contrary to counsel's allegation, Juror 148 did answer one of the voir dire questions. Juror 148 advised the court that a nephew had been charged with assault and that his case was currently pending. (R. 55-56.) Thus, the two jurors were not similarly situated.
* Note from the reporter of decisions: On July 8, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion. *Page 1233