Ronnie Lavell Bonner was convicted of first-degree robbery in violation of § 13A-8-41, Ala. Code 1975. Bonner was sentenced to 30 years in prison and was ordered to pay court costs and a fine to the Crime Victims Compensation Fund. On appeal, Bonner argues that the trial court erred to reversal when it denied his motion for a mistrial and when it denied his request for a curative instruction based upon alleged prosecutorial misconduct. We disagree, and we affirm.
The record reflects that at about 8:30 a.m. on October 12, 2003, a robbery took place at a Wendy's fast-food restaurant in Birmingham, Alabama. Twila Curry, an employee of Wendy's, testified that on the morning of October 12, 2003, she observed Leon, another Wendy's employee, enter the premises followed by two men, one of whom was holding a gun on him. She stated that the man holding the gun to Leon's back was wearing a ski mask and that the other man was wearing brown sheer panty hose over his face. She testified that she recognized the man wearing the panty hose as Bonner, the boyfriend of LaQuita Jordan, the former manager of that Wendy's location, who had been fired a few days earlier. DeShunika Watts, another Wendy's employee present at the scene of the robbery, testified that she recognized Bonner through the brown panty hose he was wearing, which covered his face except for his mouth. Lydian Bogan, the manager on duty testified that she, too, recognized Bonner through the brown panty hose. *Page 471 
Sergeant Kent Baker of the Homewood Police Department testified that he arrived at Wendy's after one of the employees telephoned emergency 911 to report that men had robbed that Wendy's location and locked all of the employees in the walk-in refrigerator. Baker testified that Bogan and Curry told him that Bonner was wearing a black nylon mask.
Bonner called LaQuita Jordan as a witness. Jordan testified that on the morning of October 12, 2003, Bonner was in her bed. Bonner also called Norma Ryan who testified that Bonner was in bed at Jordan's residence on the morning of October 12, 2003. Ryan testified she left the residence at approximately 8:00 a.m. Bonner then took the stand and testified that he did not leave Jordan's residence the entire day.
During the State's closing argument, the prosecutor produced an unopened package of brown panty hose, which were not in evidence, unwrapped the package, and placed the panty hose over his head. The defense then moved for a mistrial. Outside the jury's presence, Bonner's attorney objected to the prosecutor's use of the panty hose, which had not been admitted as evidence, and pointed out that the prosecutor used brown panty hose as opposed to black pantyhose for the demonstration.
The prosecutor argued that he had not used the panty hose as demonstrative evidence but, instead, as a visual aid to help the jury analyze the evidence. The record reflects the following exchange:
"Mr. Luker [defense counsel]:
 I move for a mistrial. This is a demonstration using things that have not been admitted into evidence. It would have been so simple just to tell everyone he wanted to do it. This is a calculated move to cause a mistrial, cause me to have to ask for one, so as to put me in a position to retry this case when the defendant is obviously winning. And there's no reason to have to put the defendant through it, but I've got to ask for a mistrial with a display like this.
"Mr. Lamb [prosecutor]:
 Judge, I will say on the record that I stood here four feet away from Mr. Luker. I took this out of my jacket. I took it out of a package. It took me a full thirty seconds to get that out. And I'll say on the record, because the record doesn't reflect exactly what happened, I put this stocking over my head. But I will say that I stood right there, not four feet from him, right in front of him. I didn't do it fast. I didn't jerk it out. It was one of those things where if he wanted to object, he saw it coming out. He saw it being unfolded. This is something where he has consciously waited till he could ask for a mistrial, not because the defendant is winning, but exactly the opposite. These women came in here. They identified the defendant. It is clearly not going his way.
 "Mr. Luker: Your Honor, just in response that, the defendant has an adequate and valid alibi, and it's going very much his way. And I didn't object when I saw him playing with this, because I didn't know exactly what he was doing or what it was until he had it spread out and pulled it over his head. And I think that is just absolutely wrong and demands a mistrial.
 "Mr. Lamb: And, Judge, I will point out this is not demonstrative evidence. This is a visual aid. The only requirement for a visual aid to be used in a trial is where it helps the jury in analyzing the evidence. In this particular case, that's what we're using it *Page 472 
for. We're not saying it's evidence. It is a visual aid.
 "Mr. Luker: And it is done as a presentation, Your Honor, to be of an evidentiary value, because it's asking this jury to make a conclusion based on the [district attorney]'s presenting it in closing like he did. One warning and we could have all resolved all of this without problem. This now begs for a mistrial.
 "The Court: Well, I'll [sic] going to overrule your motion for a mistrial.
 "Mr. Luker: And we would ask for a curative instruction to the jury telling them that they should not consider this as evidence in this case, and they shouldn't consider it in their analysis of whether or not you could see somebody through panty hose. First this is brown panty hose. They've been harping it's black, and we've got brown here.
 "Mr. Lamb: As far as that goes, the witnesses have all said brown. The police officer said black.
 "The Court: All right. I'm going to overrule your request.
"Mr. Luker: And no curative instruction or anything?
 "The Court: What bothers me is it is not in evidence. I know you're saying that it's used as an aid, a demonstrative aid to help you, but it is not something that has been used in evidence. There was testimony from the women that — I can't remember exact words, but that it appeared to be panty hose.
 "Mr. Luker: Well, I think it was a stocking cap that was fashioned from panty hose.
 "The Court: A stocking cap is the word they were using. I think one of them, and I've forgotten which one now, went into kind of detail about that. No, I'm going to deny your request, Mr. Luker. But don't put it back on."
(R. 172-76.)
Bonner argues that the trial court should have granted a mistrial or, at a minimum, should have instructed the jury to disregard the prosecutor's demonstration. To be timely, a motion for a mistrial based upon prosecutorial misconduct should be made immediately after the allegedly offending conduct occurs. E.g.,Bryant v. State, 727 So.2d 870, 876 (Ala.Crim.App. 1998). While the issue whether Bonner's objection was timely is close, we find that Bonner did preserve the issue for review, because the objection and the motion for a mistrial were made immediately after the prosecutor placed the panty hose over his head. Bonner did not wait until after the prosecutor had completed his closing; rather, as soon as he became aware of the prosecutor's intent to use the panty hose from the package to demonstrate to the jury what he believed the witnesses saw on the day of the robbery, he objected and moved for a mistrial. Therefore, the issue is properly before us.
Alabama courts have repeatedly held that a mistrial is a drastic remedy; it is to be used sparingly and only to prevent manifest injustice. The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court's ruling will not be overturned absent a manifest abuse of that discretion. E.g., Banks v. State, 919 So.2d 1223
(Ala.Crim.App. 2005); Bryant v. State, 727 So.2d 870, 877
(Ala.Crim.App. 1998). We note, too, that a prosecutor is allowed during closing argument to draw reasonable inferences from the evidence presented. In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, the court must judge each case on its own merits, and evaluate the remarks in the context of *Page 473 
the entire trial. The trial court is permitted wide discretion in regulating the arguments of counsel. Ex parte Loggins,771 So.2d 1093, 1101 (Ala. 2000).
In the present case, the prosecutor argued that he was not presenting the panty hose as physical evidence but was drawing an inference as to the color of the panty hose and as to the witnesses' ability to identify Bonner as the person wearing the panty hose over his head — matters that were in evidence through the testimony of the eyewitnesses to the robbery. However, the panty hose the prosecutor used as his "visual aid" were not in evidence, and there was a dispute in the testimony as to the witnesses' report of the color of the panty hose. Because the prosecutor's actions went beyond legitimate argument based on facts and evidence presented at trial, we find that his use of the panty hose as a "visual aid" was error. We must now consider whether that error requires reversal. Claims of prosecutorial misconduct are subject to a harmless-error analysis. E.g.,Bryant v. State, 727 So.2d at 876. When reviewing claims of prosecutorial misconduct, we have held:
 "`The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Comments made by the prosecutor must be evaluated in the context of the whole trial. Duren v. State, 590 So.2d 360, 364
(Al. Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992)."
Simmons v. State, 797 So.2d 1134, 1162 (Ala.Crim.App. 1999).
While we were unable to find any Alabama cases that directly address issue presented, a Mississippi case, Walters v. State,720 So.2d 856 (Miss. 1998), is on point and we find that Court's analysis to be persuasive. In Walters, the prosecutor, during closing argument, reached into his pocket and removed a pocketknife that was not in evidence, and displayed the knife to the jury "while making demonstrations to the jury during closing argument." Id. at 863. Although the Court found that Walters had not preserved the claim of error for review, it addressed the issue notwithstanding the procedural bar and found that the prosecutor's actions did not constitute reversible error. The Court stated:
 "In Woodward v. State, the district attorney, during closing argument, loaded the defendant's pistol with the empty shell that had killed the victim and tossed the pistol in the air to demonstrate Woodward's action when he was arrested. Woodward v. State, 533 So.2d 418, 433 (Miss. 1988). The circuit court overruled Woodward's motion for a mistrial and admonished the district attorney. Woodward, 533 So.2d at 433. Though finding the district attorney's actions were `questionable conduct for a court of law,' we found that the incident was properly handled by the circuit court. Id. In this case, the theatrics involved appear to be far more subtle than those described in Woodward. It is unclear, however, from the record what exactly the district attorney did and what the jury saw. Based on Woodward, however, the circuit court's admonition, though feeble, was a proper response, and the incident does not amount to reversible error. As a result, this issue is without merit."
Walters v. State, 720 So.2d at 864. See also People v.Barnett, 17 Cal.4th 1044, 1136, 74 Cal.Rptr.2d 121,954 P.2d 384, 443 *Page 474 
(1998) (court found that no error resulted when the prosecutor, during closing argument, displayed a knife and a fishing lure not in evidence but similar to those used in the crime, stating "[i]t is entirely proper for a prosecutor to use objects similar to those connected with the commission of a crime for purposes of illustration").
As did the Court in Walters, we find the prosecutor's actions were theatrics, and we further find that they exceeded the bounds of proper legal argument. Nonetheless, we do not find that the trial court abused its discretion when it denied the motion for a mistrial and instructed the prosecutor not to use the panty hose further. While the better course of action would have been for the trial court to have immediately instructed the jury to disregard the prosecutor's use of the panty hose as a visual aid, we find that the court's instruction during the jury charge that the jurors were restricted to considering evidence that came from the witness stand was adequate. (R. 189.)
Reviewing the prosecutor's actions in the context of the entire trial, we cannot hold that the actions "`so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181,106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v.DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1974)). As the Supreme Court found in Darden, we find that the overwhelming evidence supported a finding of guilt and it "reduced the likelihood that the jury's decision was influenced by argument." 477 U.S. at 182, 106 S.Ct. 2464. Three eyewitnesses to the robbery testified that they recognized Bonner's face through the panty hose; they knew Bonner because he was the boyfriend of the recently fired manager of that Wendy's fast-food restaurant. Furthermore, we note that Bonner's defense was not that the witnesses could not see or recognize his features through the panty hose, but that he was not present when the robbery occurred. Finally, the prosecutor did not attempt to mislead the jury into believing that the newly unwrapped panty hose were the panty hose Bonner actually wore during the robbery; rather, the panty hose were substantially similar to those described by the eyewitnesses. Accordingly, the prosecutor's actions, though improper, constituted harmless error and the trial court did not abuse its discretion in denying Bonner's motion for a mistrial or his motion for a curative instruction.
For the foregoing reasons, the circuit court's judgment is due to be affirmed.
AFFIRMED.
McMILLAN, P.J., and WISE, J., concur.
BASCHAB, J., concurs in the result, with opinion.
SHAW, J., concurs in the result.